UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL A. CRABTREE,
    Plaintiff,
  v.
ISLAND BREEZE MARINE, INC.,
    Defendant.

Civil Action No. 18-1054 (CKK)

**MEMORANDUM OPINION**
(June 21, 2019)

Plaintiff Michael A. Crabtree, the Chief Executive Officer of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers, filed suit against Defendant Island Breeze Marine, Inc., alleging the Defendant failed to pay contributions owed to the Central Pension Fund. Presently before the Court is the Plaintiff's [12] Motion for Entry of Judgment by Default and to Close Case ("Pl.'s Mot.").

Upon consideration of the pleadings, the relevant legal authorities, and the record as a whole, the Court finds the Plaintiff is entitled to a monetary award for unpaid contributions, interest, liquidated damages, reasonable attorney's fees, and costs. But the Court finds that some components of the Plaintiff's requested award must be adjusted. Accordingly, the Plaintiff's [12] Motion for Entry of Judgment by Default is **GRANTED-in-PART and DENIED-in-PART**. The Court shall enter a **JUDGMENT** for the Plaintiff against the Defendant in the amount of $29,525.88, shall recognize the Plaintiff's entitlement to post-judgment interest, and shall **CLOSE** this case and **DISMISS** it.

**I. BACKGROUND**

On May 4, 2018, the Plaintiff filed suit asserting the Defendant is required to "pay certain sums of money to the Central Pension Fund for certain hours worked by employees of the

1

Defendant performing work covered by" a collective bargaining agreement between the Defendant and International Union of Operating Engineers Local 25. Compl., ECF No. 1, ¶¶ 6-7. But the Defendant allegedly "failed to report hours worked and pay all contributions owing to the Central Pension Fund as required by" that agreement for work during May 2017 through March 2018. *Id.* ¶ 9. Accordingly, the Plaintiff seeks: (1) a monetary award covering the "unpaid contributions due and owing to the Plaintiff for unreported work performed pursuant to the Agreement"; (2) liquidated damages for "any late paid and unpaid contributions"; (3) interest on "any late paid and unpaid contributions"; and (4) reasonable attorney's fees and costs. *Id.* at 4-5. In the Complaint, the Plaintiff also makes an ancillary request "[f]or such contributions, interest and liquidated damages that may accrue and/or are found to be due and owing to the Plaintiff . . . up to the date of judgment." *Id.* at 4.

Thereafter the Plaintiff experienced difficulties in perfecting service on the Defendant but ultimately purported to achieve substituted service via the Maryland State Department of Assessments and Taxation. *See* Aff. of Attorney R. Richard Hopp, ECF No. 6-1 ("Hopp Aff.").

When the Defendant failed to appear in the case, the Court prompted further action by the Plaintiff. The Plaintiff sought default, which the Clerk of Court entered on August 24, 2018. Again at the Court's prompting, the Plaintiff then moved for default judgment.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55(a) provides that the Clerk of the Court must enter a party's request for a default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). After a default has been entered by the Clerk, a party may move the court for a default judgment. Fed. R. Civ. P. 55(b)(2).

"The determination of whether default judgment is appropriate is committed to the discretion of the trial court." *Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC*, 531 F. Supp. 2d 56, 57 (D.D.C. 2008) (citation omitted); 10A Charles Alan Wright et al., Federal Practice & Procedure Civil § 2685 (4th ed.). Factual allegations in a well-pleaded complaint against a defaulting defendant are taken as true. *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co., Inc.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002) (citation omitted). Where there is a complete "absence of any request to set aside the default or suggestion by the defendant that it has a meritorious defense, it is clear that the standard for default judgment has been satisfied." *Auxier Drywall, LLC*, 531 F. Supp. 2d at 57 (citation and internal quotation marks omitted).

Once that standard has been met, the court must independently determine the amount of damages to be awarded, unless the amount of damages is certain. *Int'l Painters & Allied Trades Indus. Pension Fund v. Davanc Contracting, Inc.*, 808 F. Supp. 2d 89, 94 (D.D.C. 2011) (Kollar-Kotelly, J.) (citing *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001)).[1] In instances where the amount of damages is not certain, "the court may conduct a hearing" but "is not required to do so . . . as long as it ensures that there is a basis for the damages specified in the default judgment." *Flynn v. Extreme Granite, Inc.*, 671 F. Supp. 2d 157, 160 (D.D.C. 2009) (citations and internal quotation marks omitted). In making an independent determination, "the court may rely on detailed affidavits or documentary evidence." *Breaking the Chain Found., Inc. v. Capitol Educ. Support, Inc.*, 589 F. Supp. 2d 25, 28 (D.D.C. 2008) (Kollar-Kotelly, J.) (quoting *Adkins*, 180 F. Supp. 2d at 17) (internal quotation marks omitted).

---

[1] The Plaintiff has not invoked the Clerk's authority to enter judgment "for a sum certain or a sum that can be made certain by computation." Fed. R. Civ. P. 55(b)(1). Accordingly, the Court need not consider whether the Plaintiff's request could be resolved without the Court's involvement.

## III. DISCUSSION

The Plaintiff, as a designated fiduciary of the Central Pension Fund, filed suit to enforce the Defendant's obligations to the fund, as provided by the Employee Retirement Income Security Act of 1974 ("ERISA"). *See* 29 U.S.C. §§ 1002(21), 1132(a)(3) & (g), 1145; Compl., ECF No. 1, ¶ 1. The Court has federal-question jurisdiction over this action. *See* 28 U.S.C. § 1331; 29 U.S.C. § 1132(e)(1).

After attempting service on the Defendant's registered agent in Maryland, and finding that the registered agent had sold that residence, the Plaintiff properly turned to, and perfected, substituted service upon Maryland's State Department of Assessments and Taxation. *See* Hopp Aff. ¶¶ 2-7, 12-13 & Exs. 1-2, 5-6; Fed. R. Civ. P. 4(e)(1), 4(h)(1); Md. Rule 2-124(o)(ii) (providing for such service on a corporation if, *inter alia*, "(ii) the resident agent . . . is no longer at the address for service of process maintained with the State Department of Assessments and Taxation").

In light of the Defendant's default, the Court accepts the Plaintiff's allegations as true. *R.W. Amrine Drywall Co., Inc.*, 239 F. Supp. 2d at 30. The Court finds that the Plaintiff's Complaint sufficiently alleges facts to support his claims. The Plaintiff is thus entitled to default judgment as to the Defendant's liability for its failure to make contributions, or full contributions, owed to the Central Pension Fund for certain work performed by the Defendant's employees.

The Plaintiff has not argued that the award he seeks consists of sums certain, though perhaps he could have. *See Boland v. Yoccabel Constr. Co., Inc.*, 293 F.R.D. 13, 18, 19 (D.D.C. 2013) (citing *Flynn v. Mastro Masonry Contractors*, 237 F. Supp. 2d 66, 70 (D.D.C. 2002)). Accordingly, the Court shall make its independent determination of the monetary award to which

the Plaintiff is entitled. *Davanc Contracting, Inc.*, 808 F. Supp. 2d at 94. Under ERISA, that award "shall" include the following:

> (A) the unpaid contributions,
>
> (B) interest on the unpaid contributions,
>
> (C) an amount equal to the greater of--
>
>> (i) interest on the unpaid contributions, or
>>
>> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2)(A)-(E). Interest is calculated using the rate provided by the parties' agreement, or, if the agreement does not specify, the rate found in 26 U.S.C. § 6621. *Id.*

In support of his motion for default judgment, the Plaintiff submitted his own declaration, as well as a number of documents concerning a trust agreement governing the Central Pension Fund, the collective bargaining agreement with the Defendant, and the contributions owed by the Defendant. *See, e.g.*, Decl. of Michael A. Crabtree, ECF No. 12-3 ("Crabtree Decl."), Ex. A (excerpts of Restated Agreement and Declaration of Trust ("Declaration of Trust")); *id.* Ex. B (excerpts of Standard Master Agreement between Central Pension Fund and the Defendant, and Standard Northern Addendum executed by same representative of the Defendant (collectively, "Agreement")). The Declaration of Trust provides for an award of various types that roughly tracks Section 1132(g)(2).

In light of the Plaintiff's exhibits and the factual allegations in the Complaint, the Court finds the Plaintiff is entitled to a judgment in the amount of $19,754.25 in unpaid contributions to

the Central Pension Fund.  Pursuant to the relevant ERISA provisions and the Declaration of Trust, the Plaintiff is further entitled to interest on the unpaid contributions through the date of judgment, liquidated damages, reasonable attorney's fees, and costs.  *See Boland*, 293 F.R.D. at 19 (recognizing that sum awarded for default judgment may include amounts accruing after filing of complaint where plaintiff requested as much in the complaint).

### A. Unpaid and Partially Unpaid Contributions

Initially, the Plaintiff seeks a monetary award in the amount of $26,153.55, the total unpaid and partially unpaid contributions owed by the Defendant to the Central Pension Fund for the months of June 2017 and October 2017 through September 2018.  The Defendant's signature of the Agreement signifies its consent to abide by the Agreement for work performed between October 1, 2015, and September 30, 2018.  *See* Crabtree Decl. ¶¶ 8-9; Agreement at 0011, 0016 (noting effective dates of Agreement, including its addendum).  The Agreement requires the Defendant to submit a Remittance Report to the Central Pension Fund each month that identifies the number of hours worked by employees covered by the Agreement.  Crabtree Decl. ¶ 7; Agreement at 0013.  The Defendant must contribute to the Central Pension Fund at a specified hourly rate, which increased from $2.25 to $2.35 on October 1, 2017.  Crabtree Decl. ¶ 9; Agreement at 0017.

What complicates matters is that the Defendant's compliance with its obligations to the Plaintiff evidently fluctuated across the May 2017 to March 2018 timeline identified in the Complaint, and the time period that followed.  The Plaintiff did not differentiate levels of (non)compliance in the Complaint, but the Court shall credit his declaration with furnishing sufficient specificity now for purposes of determining damages.  The Defendant was placed on

notice by the Plaintiff's catch-all request for contributions "that may accrue and/or are found to be due and owing to the Plaintiff . . . up to the date of judgment." Compl., ECF No. 1, at 4.

The Court shall consider the Plaintiff's request for contributions under three separate headers, corresponding to the differing degrees of the Defendant's compliance. The Court shall find that the Plaintiff is entitled to a total recovery for unpaid contributions of $19,754.25.

    1. <u>Reported and Unpaid Contributions</u>

First, in some instances, the Defendant reported its employees' hours but failed to pay the corresponding contributions to the Plaintiff. The Defendant submitted Remittance Reports to the Central Pension Fund indicating its employees performed 3,805 hours of work under the Agreement between November 2017 and March 2018. *See* Crabtree Decl. ¶ 11 & Ex. C. The Plaintiff has assessed that the Defendant owes the Central Pension Fund $8,942.20. Crabtree Decl. ¶ 12. Using the hourly contribution rate of $2.35, the Court has instead calculated a total unpaid contribution of $8,941.75, with the slight discrepancy surely attributable to copy errors.[2] Although the respective monthly contributions were due by the twentieth day of the following month, the Plaintiff has declared under penalty of perjury that the Defendant had yet to pay contributions owed for November 2017 through March 2018 as of the filing of the pending motion. *See* Agreement at 0013; Crabtree Decl. ¶ 12; *infra* Part III.B (identifying contribution as due the *following* month). Based on the documentary evidence, as well as the allegations taken as true, the Court finds that the Plaintiff is entitled to reported, unpaid contributions in the amount of $8,941.75.

---

[2] For November 2017, the Plaintiff calculated $2,733.50, while the Court determined that the correct figure is $2,733.05. The Plaintiff tabulated $1,001.00 for March 2018, while the Court found that the accurate amount is $1,001.10.

2. Unreported and Estimated Contributions

For certain additional periods, the Defendant neither reported the hours that its employees worked nor made any contributions to the Central Pension Fund. Crabtree Decl. ¶ 15 (no Remittance Reports); *see also id.* ¶ 17 (estimating amount of contributions owed). Some of those periods post-date the filing of the Complaint in May 2018, but the Complaint placed the Defendant on notice that the Plaintiff would seek an award through the date of judgment. *See* Compl., ECF No. 1, at 4.

The Plaintiff lacks Remittance Reports for June 2017 and for April 2018 through September 2018. Crabtree Decl. ¶ 15. Accordingly, the Plaintiff estimated the total employee hours worked in each of these months based on the average number of hours in the Defendant's Remittance Reports covering February 2017 through May 2017 and July 2017 through March 2018. *Id.* ¶ 16. The Plaintiff has not submitted each of those Reports, but the Plaintiff does list the number of hours worked in each of those months and correctly calculate that the average was 1,041. *Id.* ¶ 16 & Ex. C. The Court shall take the Plaintiff at his word—offered under penalty of perjury—that the monthly hours supporting that average are correct.

The Court now must decide whether to rely on this method of estimating the missing hours. *See, e.g.*, *Int'l Painters & Allied Trades Indus. Pension Fund v. Rose City Glass Co., Inc.*, 729 F. Supp. 2d 336, 340 & n.4 (D.D.C. 2010) (deferring to "reasonably certain" estimate). But the Court is chary of doing so because this average is inconsistent with monthly trends in the Defendant's reported hours. Taking the issues chronologically, the unreported June 2017 hours fall between May 2017, for which the Defendant evidently reported 1,306 hours, and July 2017, for which only 104 hours were reported. *See* Crabtree Decl. Ex. C at 0020. It is unreasonable to assume that the average applicable to the entire year would apply to a month sandwiched between a sharp

discrepancy in hours. In addition, the trend in hours worked tails sharply downwards in the months preceding April 2018. The average hours per month in the prior three months, for example, is 656. The Plaintiff has not given any reason to assume that employees' hours would jump upwards to 1,041, whether for April 2018 or for the entirety of the April through September 2018 time period.[3]

In light of these issues, the Court shall adopt a different estimate for the unreported months. Some other courts in this jurisdiction have credited estimates based on reports for the three months preceding the gap. *See Rose City Glass Co., Inc.*, 729 F. Supp. 2d at 340 & n.4; *Flynn v. Extreme Granite, Inc.*, 671 F. Supp. 2d at 159 n.2, 162. Because the three-month interval preceding April 2018 seems to be appropriate, the Court shall adopt 656 hours as the monthly estimate for April through September 2018. This estimate shall also be applied to June 2017, as the average of the May and July 2017 hours is only slightly higher. Accordingly, the Defendant failed to report an estimated 4,592 total hours for June 2017 and April through September 2018.

At the hourly contribution rate of $2.25 per hour for the 656 hours in June 2017, and $2.35 per hour for the 3,936 total hours in April through September 2018, the Plaintiff is entitled to unreported, estimated contributions of $10,725.60.

3. Reported and Partially Unpaid Contributions

The Plaintiff's motion also identifies a third category of noncompliance, where the Defendant evidently reported its employees' hours but paid only a portion of the corresponding contribution to the Central Pension Fund. *See* Pl.'s Mot. at 8. The Plaintiff's declaration attaches

---

[3] Given the general downward trend in hours, and the difficulties effecting service, perhaps the Defendant was not a going concern after March 2018. The Court does spot a fleeting reference to a "prior bankruptcy proceeding" in the Plaintiff's counsel's time records. Decl. of Attorneys' Fees and Legal Costs, ECF No. 12-3, Ex. B (time sheet). However, absent any specificity or any affirmative indication that the Defendant's employees did not work at all in the April 2018 through September 2018 time period, the Court shall not draw that inference on behalf of a defaulting Defendant.

a Central Pension Fund "Discrepancy Report" indicating that the Defendant paid $2,272.50 of its $2,239.40 obligation in October 2017. *See* Crabtree Decl. Ex. D. Although the Plaintiff does not mention this balance in his declaration, the Court has no reason to doubt the Discrepancy Report and finds that the Plaintiff is entitled to the $86.90 balance. *See id.*

**B. Interest**

The Plaintiff also seeks interest on the reported, unpaid contributions and the unreported, estimated contributions through the date of judgment. *See* Crabtree Decl. ¶¶ 13, 18; Crabtree Decl. Ex. E at 0029-0030 (interest calculation worksheet). The Plaintiff has not requested interest on the reported, partially unpaid contribution in October 2017.

The Court calculates the award of interest "by using the rate provided under the plan, or, if none, the rate prescribed under [26 U.S.C. § 6621]." 26 U.S.C. § 1132(g)(2). The Declaration of Trust identifies 9% as the rate for simple interest accrual. Decl. of Trust § 4.5(b). The Plaintiff has then calculated that the daily interest rate is 0.000246575, which approximates a 9% annual rate divided by 365 days per year. *See* Crabtree Decl. Ex. E at 0030.

Because the Court determined that the Plaintiff is entitled to unpaid contributions that differ from what the Plaintiff claimed, the Court shall make its own further calculations of the interest accrued. The Court shall multiply each missing monthly contribution by the unrounded daily interest rate to generate the daily interest calculation. Next the daily interest calculation for an unpaid contribution is multiplied by the number of days that this contribution is late.

The number of days late requires some discussion. Interest accrues as of the date that the payments are due, which the Agreement shows is the twentieth day of the month. Agreement at 0013 ("Remittance of employer contributions to all Benefit Plans other than . . . 401(k) Contributions . . . will be due on the 20th day of each month."). But the payment due date is subject

to some discrepancies. The Plaintiff has identified the twentieth day of certain months as the due date for the months with unreported, estimated contributions. *See* Crabtree Decl. Ex. E at 0030. For June 2017, the Plaintiff determined that the due date was June 20, 2017, but for each of the months April 2018 through September 2018, the Plaintiff indicated that the due date was the twentieth day of the *following* month. The language of the Agreement is somewhat unclear as to which of these different methods is the correct one. Yet, the sample Remittance Forms—which appear to use a form provided by the International Union of Operating Engineers—clarify that the "[c]ontributions shall be made no later than the *20th [sic] of the month following the payroll month*." *E.g.*, Crabtree Decl. Ex. C at 0021 (emphasis added). Accordingly, the June 2017 due date should instead read July 20, 2017. With that correction, the Court shall adopt these deadlines for the months with unreported, estimated contributions.

By contrast, for the reported, unpaid contributions, the Plaintiff proposes a due date that differs for some reason from the twentieth of the month. The proposed due date is the first day of, not the following month, but the month after the following month. For example, the Plaintiff identifies the due date for the November 2017 payment as January 1, 2018. *See* Crabtree Decl. Ex. E at 0029. Nevertheless, using that date produces a more conservative calculation of the amount of interest that the Defendant owes, so the Court shall adopt the Plaintiff's proposed due date for the months with reported, unpaid contributions. The Court shall calculate interest running through the date of judgment, i.e., today, June 21, 2019, as the Plaintiff requested in his Complaint.

Based on the Court's calculations, the Court shall award to the Plaintiff interest on the reported, unpaid contributions in the amount of $1,070.81, and interest on the unreported, estimated contributions in the amount of $985.72. The Plaintiff is entitled to total interest of $2,056.53.

The Plaintiff also asks in his proposed order for post-judgment interest "at the statutory rate." [Proposed] Judgment by Default Pursuant to Rule 55 of the Federal Rules of Civil Procedure, ECF No. 12-4. He did not make that request in his Complaint, however, nor has he cited authority for that type of award or the applicable rate. Nevertheless, the Court finds that the Plaintiff is entitled to post-judgment interest under 28 U.S.C. § 1961 at the rate prescribed therein. *See* 28 U.S.C. § 1961 (indicating that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court," and describing the interest calculation); *I.A.M. Nat'l Pension Fund, Plan A, A Benefits v. Slyman Indus., Inc.*, 901 F.2d 127, 130 (D.C. Cir. 1990) (affirming the district court's application of Section 1961 in ERISA case); *Faraca v. Fleet 1 Logistics, LLC*, 693 F. Supp. 2d 891, 897 (E.D. Wis. 2010) (collecting authorities).

**C. Liquidated Damages**

Pursuant to the Declaration of Trust, the Central Pension Fund may obtain liquidated damages from an employer that has not made the required contributions. Those damages may be "up to twenty percent (20%) of the amount found to be delinquent." Decl. of Trust § 4.5(b); *accord* 29 U.S.C. § 1132(g)(2)(C)(ii).[4] The Plaintiff has asked for liquidated damages amounting to only 15% of the reported, unpaid contributions and the unreported, estimated contributions. *See* Pl.'s Mot. at 9; Crabtree Decl. ¶¶ 14, 19. The Declaration of Trust and relevant statutory provision establish that the Plaintiff is entitled to liquidated damages as requested.

The Court shall award the Plaintiff liquidated damages in the amounts of $1,341.26 for reported, unpaid contributions, and $1,608.84 for unreported, estimated contributions. The

---

[4] The statute actually permits the Plaintiff to recover interest as well as "an amount equal to *the greater of*" liquidated damages or the interest. 29 U.S.C. § 1132(g)(2)(C)(i), (ii) (emphasis added). But the Declaration of Trust specifies only liquidated damages. *See* Decl. of Trust § 4.5. In any case, liquidated damages are greater than the interest calculated above; accordingly, the Plaintiff would recover the liquidated damages even under the statute.

Plaintiff has not requested liquidated damages for the reported, partially unpaid contribution in October 2017. Accordingly, the total liquidated damages are $2,950.10.

**D. Attorney's Fees & Costs**

Finally, the Plaintiff requests attorney's fees in the amount of $3,780.00, and costs totaling $985.00.

The Plaintiff is entitled to "reasonable attorney's fees and costs of the action." 29 U.S.C. § 1132(g)(2)(D); Decl. of Trust § 4.5(e) (authorizing imposition of costs and attorney's fees). The Plaintiff's attorney, Charles W. Gilligan, submitted a declaration indicating that colleagues in his firm spent a total of 12.6 hours on this matter. Decl. of Attorneys' Fees and Legal Costs, ECF No. 12-3 ("Gilligan Decl."), ¶ 4 & Ex. B (time sheet). The Court's review of the firm's time records show that the time was spent, *inter alia*, drafting the complaint, communicating with various offices associated with the client, facilitating service, and researching and drafting the present motion. Gilligan Decl. Ex. B. Two attorneys of differing legal experience performed the legal work on this case, and neither Mr. Gilligan nor the time records expressly distinguish which attorney did which work. *See, e.g.*, Gilligan Decl. ¶¶ 2, 3; Gilligan Decl. Ex. B (identifying employee number but not name). However, the Court has consulted the *Laffey* matrix at the website cited by the Plaintiff and finds that the requested hourly rate of only $300 per hour falls below the *Laffey* rate for either attorney. *See* Pl.'s Mot. at 10; *Salazar v. District of Columbia*, 123 F. Supp. 2d 8 (D.D.C. 2000); Laffey Matrix, www.laffeymatrix.com/see.html. The Court finds that both the number of hours and rate charged by the Plaintiff's attorneys are reasonable. The costs are attributable to the $400 filing fee and $585 for five attempts at service of process in three jurisdictions, including the substituted service that the Court has found effective. Gilligan Decl. ¶¶ 7, 8 & Exs. C, D; Pl.'s Mot. at 10.

The Court shall award the Plaintiff reasonable attorney's fees of $3,780.00, and costs of $985.00, for a total of $4,765.00.

## IV. CONCLUSION

For the foregoing reasons, the Plaintiff's [12] Motion for Entry of Judgment by Default and to Close Case is **GRANTED-in-PART and DENIED-in-PART**. The Plaintiff is entitled to a default judgment, but the value of that judgment differs from what he has requested. The Court shall award the Plaintiff unpaid contributions ($19,754.25); interest on the unpaid contributions ($2,056.53); liquidated damages ($2,950.10); and attorney's fees and costs ($4,765.00), totaling $29,525.88. The Plaintiff is also entitled to recover post-judgment interest as prescribed by 28 U.S.C. § 1961.

The Court shall **CLOSE** this case and **DISMISS** it.

An appropriate Order accompanies this Memorandum Opinion.

Dated: June 21, 2019

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge